UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK





------------------------------------------------------------------x
ANTOANETA IOTOVA; OLENA KALICHENKO; BROOKLYN OFFICE
ISSAK ALMALEH,

          Plaintiffs,

       v.

WARDEN HERMAN E. QUAY, METROPOLITAN
DETENTION CENTER BROOKLYN; BUREAU OF
PRISONS; DEPARTMENT OF JUSTICE; JANE
AND JOHN DOE; DORIS EVANS,

          Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
19-CV-1957 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

    Plaintiffs Antoaneta Iotova, her husband Issak Almaleh, and Olena Kalichenko, who

were all incarcerated as pretrial detainees at the Metropolitan Detention Center ("MDC") in

Brooklyn, New York at the time of filing,[1] brought this action alleging violations of their civil

rights and seeking money damages and injunctive relief. Compl., ECF No. 1. The Court

dismissed the Complaint and Plaintiffs were granted leave to file an amended complaint, ECF

No. 23, which they have done, ECF No. 24 (the "Amended Complaint"). For the reasons

discussed below, Plaintiff Olena Kalichenko's claim is dismissed. Plaintiffs Antoaneta Iotova

and Issak Almaleh are granted 45 days leave from the date of this Order to file a second amended

complaint, as discussed below.

---

[1] A review of the Bureau of Prisons inmate locator website reveals Plaintiff Olena Kalichenko is currently being
held at FCI Waseca in Waseca, Minnesota and Plaintiffs Antoaneta Iotova and Issak Almaleh are currently being
held at MDC. *See* Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Feb. 13,
2020).

## BACKGROUND

Antoaneta Iotova ("Iotova") and fellow inmate Olena Kalichenko ("Kalichenko"), who were housed in a female unit of MDC, and Iotova's husband Issak Almaleh ("Almaleh"), who is still currently housed in a male unit at MDC, allege they were subjected to unconstitutional conditions of confinement at MDC. The *pro se* Amended Complaint is not perfectly clear. It states the events giving rise to plaintiffs' claims occurred between January 2018 and July 2019. Amend. Compl. at 3.[2]

Iotova alleges she was housed in a unit with transgender inmates, which caused her psychological trauma because she was threatened by transgender inmates on multiple occasions and, on one occasion, "a transgender [woman], next to Iotova was sexually aggressive and seducing, twirking [sic] in the face of plaintiff Iotova with his a[**] all the time." *Id.* at 19. Iotova alleges this threatening and harassing behavior was sometimes done in front of security cameras and "this unconstitutional sexual harassment that is stimulated by the staff, who was accommodating in this way the inmates." *Id.* at 19, 20.

Iotova further alleges she was placed in the Special Housing Unit ("SHU") for 15 days from the end of January 2018 to the middle of February 2019, without due process and despite her documented history of mental illness. *Id.* at 4. She states "the personnel didn't care about Iotova's psychological condition and consequences that could have aggravated severely her condition." *Id.* at 23–24. Iotova states she was put in the SHU "as a direct order from the unit manager Bridges." *Id.* at 24. She also states the "personnel of the unit refused to provide reason why Iotova was placed in 'SHU,' [and] [s]he tried to find out why by filing BOP forms for remedy . . .," but was advised she could file a lawsuit. *Id.* at 26. Iotova alleges while in the

---

[2] Because the amended complaint does not include consistent page numbers, all page citations refer to the page delineations of the Amended Complaint on ECF.

SHU, she "was not provided any help. She was kept without heat in winter months," and was served peanut butter for lunch three times in a row, which she could not eat because she is allergic to peanut butter. *Id.* at 24.

As part of the Amended Complaint—which appears predominantly in Iotova's handwriting—Kalichenko submits a separate, signed prisoner civil rights form complaint in her own handwriting. Amend. Compl. at 6–12. Kalichenko alleges her civil rights were violated by being subjected to body cavity searches almost every day upon returning from her work assignment in the prison, which was "extremely humiliating." *Id.* at 9, 11. Kalichenko states on December 20, 2018, while waiting in a holding cell to go to court, Defendant Correction Officer Doris Evans, "forced all of us to go through the humiliating strip search procedure in front of each other despite of my refusal." *Id.* at 11.

The Amended Complaint alleges Almaleh's civil rights were violated while MDC was without heat or electricity for over a week in late January 2019 to early February 2019. *Id.* at 34. The Amended Complaint states "[i]n this dark cave conditions the men stayed for 10 days. Medications were irregularly provided, food was dry and unprepared, there was no heat in the month of February in NYC." *Id.* at 35. However, it is clear Iotova drafted this portion of the Amended Complaint on Almaleh's behalf and the Amended Complaint fails to include sufficient facts as to how Almaleh was personally affected during that time.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." At the pleadings stage of the proceeding, the Court must assume the truth of

3

"all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. Furthermore, it is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008).

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain statement of claim against each defendant named so they have adequate notice of the claims against them. *Iqbal*, 556 U.S. 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). A plaintiff must provide facts sufficient to allow each defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly v. Bell*, 425 F.3d 99, 106 (2d Cir. 2005) (defining "fair notice" as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial.") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A court may dismiss a

complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988).

## DISCUSSION

As the Court discussed in its previous Order in this case, because Plaintiffs allege their rights were violated by persons acting under color of federal law, the Court construes the Amended Complaint as brought under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). In *Bivens,* the Supreme Court recognized an implied private cause of action for damages against federal officers who violate a citizen's constitutional rights. *Id.* *Bivens* actions, although not completely parallel, are the federal analog to actions under 42 U.S.C. § 1983 against state actors. *Hartman v. Moore,* 547 U.S. 250, 255 n. 2 (2006) (noting a *Bivens* action is the federal analogue to claims against state actors brought under § 1983); *see also Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir. 1995) ("federal courts typically incorporate § 1983 law into *Bivens* actions"); *Tyler v. Dunne,* 16-CV-2980, 2016 WL 4186971, at \*2 (E.D.N.Y. Aug. 8, 2016) (Mauskopf, J.) (§ 1983 claims against federal actors should be characterized as *Bivens* claims). The Court addresses each Plaintiffs' claims in turn.

## I.    Kalichenko's Claim

Kalichenko's claim she was subjected to humiliating strip searches must be dismissed. The Fourth Amendment requires searches of prison inmates be "reasonably related to legitimate security interests." *Florence v. Bd. of Chosen Freeholders of Burlington,* 566 U.S. 318, 328 (2012) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Harris v. Miller,* 818 F.3d 49, 57 (2d Cir. 2016) (stating inmates maintain a limited right to bodily privacy under the Fourth Amendment). To state a Fourth Amendment claim for the infringement of the right to bodily privacy, a plaintiff must show she had an actual, subjective expectation of bodily privacy, and

officials lacked a sufficient justification to intrude on the plaintiff's expectation of bodily privacy. *Harris*, 818 F.3d at 57. Strip searches do not violate the Fourth Amendment if they are performed pursuant to policies that are "reasonably related to legitimate penological interests." *Florence*, 566 U.S. at 326 (quoting *Turner*, 482 U.S. at 89). However, where "[a] corrections officer's intentional contact . . . serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate," such a search violates the Fourth Amendment. *Crawford v. Cuomo*, 796 F.3d 252, 257–58 (2d Cir. 2015).

Plaintiff Kalichenko alleges she was subjected to humiliating strip searches in front of other inmates. However, Kalichenko fails to allege facts suggesting the searches were unreasonable. The law allows for reasonable searches of the type Kalichenko alleges. *See Crawford*, 796 F.3d at 225 (holding "prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches," but such a search "may not be undertaken maliciously or for the purposes of sexually abusing the inmate"). According to Kalichenko's own allegations, other inmates were also subjected to similar searches, suggesting the searches were routine and random. Kalichenko provides no facts to suggest the searches were conducted in an unreasonable manner.

Kalichenko therefore fails to state a viable Fourth Amendment claim. *See Thompson v. City of New York*, 16-CV-824, 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017) (Castel, J.) ("Plaintiff's argument that there was no 'cause' to strip search him is unavailing because *Florence* permits correction officers to strip search detainees without particularized suspicion."); *Walker v. Ponte*, 14-CV-8507, 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016) (Ramos, J.) ("That the strip searches were carried out in front of cameras and other inmates does not counter [the legitimate security interest of discovering contraband].") (citations omitted); *Rebenstorf v.*

*City of New York*, 15-CV-5784, 2015 WL 6438765, at *3 (E.D.N.Y. Oct. 21, 2015) (Cogan, J.) (dismissing plaintiff's visual body cavity search claim for failing to state a claim under the Fourth Amendment because plaintiff failed to make any allegations that the search, which took place in front of other inmates and officers, was any different from "a routine, random strip search of inmates"); *Smith v. City of New York*, 14-CV-5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (Francis, Mag. J.) (recognizing "neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional"); *Israel v. City of New York*, 11-CV-7726, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (Furman, J.) ("The presence of other inmates and officers, males and females, does not alter [the] determination [that the searches were reasonably related to legitimate security interests]."); *Castro-Sanchez v. N.Y. State Dep't of Corr. Servs.*, 10-CV-8314, 2011 WL 6057837, at *9 (S.D.N.Y. Dec. 6, 2011) (Cote, J.) ("Routine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment."). Accordingly, the Court dismisses Kalichenko's claim in the Amended Complaint.

## II.    **Iotova's Claims**

### A.    Failure to Protect

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," which requires "a showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The standard of deliberate indifference "includes both subjective and objective components." *Laurent v. Borecky*, 17-CV-3300, 2018 WL 2973386, at *3 (E.D.N.Y. June 12, 2018) (Chen, J.). "[O]bjectively, the alleged deprivation must be sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). "In addition, the

7

'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively,' *Darnell*, 849 F.3d at 35; therefore, 'the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" *Harris v. City of New York*, 16-CV-1214, 2018 WL 4471631 (E.D.N.Y. Sept. 18, 2018) (Chen, J.) (citing *Darnell*, 849 F.3d at 35). The objective element requires showing "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Darnell*, 849 F.3d at 30 (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *see also Taylor v. City of New York*, 16-CV-7857, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (Buchwald, J.) ("Although *Darnell* involved a Fourteenth Amendment challenge to a prisoner's conditions of confinement, its holding applies with equal measure to failure to protect claims."). The mere negligence of a correctional official is not a basis for a claim of a federal constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 335–36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

To the extent Iotova seeks to assert any correction official knew of an excessive risk to her health and safety and failed to take reasonable measures to protect her, she fails to state a claim. Iotova is therefore granted leave to amend her complaint to allege sufficient facts that correction officials were deliberately indifferent because they knew of a specific serious risk to her health and safety during her detention and took no action to prevent it. Iotova must name as defendants the individuals who failed to protect her from harm and allege facts showing how each defendant was personally involved.

B.    SHU Claims

"A prisoner's liberty interest is implicated by prison discipline, such as SHU [segregated housing unit] confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009); *Kalwasinski v. Morse*, 201 F.3d 103,107–08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU constitutes an atypical hardship). Furthermore, where a liberty interest is implicated, a prisoner is not entitled to "the full panoply of rights" due in a criminal prosecution but is generally entitled to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

To the extent Iotova seeks to bring a Fourteenth Amendment substantive or procedural due process claim related to being placed in SHU, her complaint fails to state a claim as pleaded. Iotova's substantive due process claim must be dismissed because she has not asserted enough facts that would allow the Court to assess whether the conditions she was subjected to constituted a significant and a typical hardship compared with ordinary prison conditions. Iotova also does not allege enough facts for the Court to determine whether any type of disciplinary hearing was held, let alone whether there were any shortcomings with respect to that disciplinary

hearing. *See Palmer*, 364 F.3d at 64 (noting there is "no right to due process at [a disciplinary] hearing unless a liberty interest was infringed as a result" (citations, quotation marks, and original alterations omitted)). Therefore, because Iotova has not alleged sufficient facts suggesting she was deprived of a liberty interest, her due process claim fails.

### III. Almaleh's Claim

It appears Almaleh was housed at MDC during the time MDC was without heat or electricity for over a week in late January 2019 to early February 2019. However, he fails to allege specific facts stating how he was personally affected by those events, such as whether he was personally denied medication, food, or access to his attorney. Thus, he fails to state a claim.

### IV. Leave to Amend

In light of this Court's duty to liberally construe *pro se* complaints, *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000), the Court grants Iotova and Almaleh leave to file a second amended complaint to support each of their claims and cure the deficiencies discussed herein. Should Iotova and Almaleh elect to file a second amended complaint they must allege individualized facts for both of them supporting the elements of each claim they allege and identify the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1991); *Leibovitz v. City of New York*, 15-CV-1722, 2015 WL 3971528, at *4 (E.D.N.Y. June 30, 2015) (Matsumoto, J.); *Holmes v. Kelly*, 13 CV 3122, 2014 WL 3725844, at *2 (E.D.N.Y. July 25, 2014) (Irizarry, J.). Iotova and Almaleh must also "allege a tangible connection between the acts of [each] defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

10

Additionally, they are advised liability under *Bivens* cannot be generally imposed on a supervisor solely based on his position because there is no *respondeat superior* or vicarious liability under § 1983. *See, e.g.*, *Iqbal*, 556 U.S. 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003); *Hurdle v. Pagnotta*, 16-CV-4186, 2016 WL 4186974, at *2 (E.D.N.Y. Aug. 5, 2016) (Cogan, J.).

## CONCLUSION

Accordingly, Plaintiff Olena Kalichenko's claim is dismissed for failure to state a claim. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. The Clerk of Court is directed to terminate Plaintiff Olena Kalichenko from this action. Plaintiffs Antoaneta Iotova and Issak Almaleh are granted 45 days leave from the date of this Order to file a second amended complaint to cure the deficiencies discussed above.

Iotova and Almaleh are reminded their second amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure and Iotova may not bring claims on Almaleh's behalf. They must identify the defendants in both the caption and the body of the second amended complaint, provide the dates and locations for each relevant event and state what each individual defendant did or failed to do to violate their constitutional rights. Even if they do not know the name of the individual, they may identify the individual as John or Jane Doe, along with descriptive information. For example, C.O. John or Jane Doe, on duty (date & time) at MDC (specify location within MDC).

Iotova and Almaleh are advised a second amended complaint does not simply add to the Amended Complaint. Once a second amended complaint is filed, it completely replaces the

Amended Complaint. The second amended complaint must be captioned as a "Second Amended Complaint," bear the same docket number as this Order and be signed by Iotova and Almaleh. Iotova cannot sign the second amended complaint on behalf of her husband and vice versa. For that reason, the Court has provided extra time to file the second amended complaint. The Clerk of Court is directed to send a Prisoner Civil Rights form complaint to Iotova and Almaleh, along with this Order.

The Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

s/WFK

WILLIAM F. KUNTZ, II
United States District Judge

Dated: Brooklyn, New York
      February 14, 2020