```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANTOANETA IOTOVA and
ISSAK ALMALEH,

                    Plaintiffs,                              MEMORANDUM AND ORDER
                                                             19-CV-1957 (WFK)(LB)
          v.

WARDEN HERMAN E. QUAY,
METROPOLITAN DETENTION CENTER,
BUREAU OF PRISONS, DEPARTMENT OF
JUSTICE, DORIS EVANS, and JANE AND
JOHN DOE,

                    Defendants.
------------------------------------------------------------X
```
**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiffs Antoaneta Iotova and Issak Almaleh, along with Olena Kalichenko, jointly filed the above-captioned civil action, which was received by the Court on March 26, 2019. By Memorandum and Order dated July 9, 2019, the Court dismissed plaintiffs' claims against the Metropolitan Detention Center ("MDC"), the Bureau of Prisons ("BOP"), and the Department of Justice under the doctrine of sovereign immunity. ECF No. 23. Plaintiffs filed an Amended Complaint on August 1, 2019 naming Warden Herman E. Quay, Jane and John Doe, and Doris Evans as defendants. ECF No. 24. By Memorandum and Order dated February 14, 2020, the Court dismissed Kalichenko from the lawsuit and directed the remaining plaintiffs, Iotova and Almaleh, to file a second amended complaint within 45 days. ECF No. 45. On March 19, 2020, the Court received a second amended complaint (the "Second Amended Complaint"), ECF No. 49, purportedly signed by Iotova, Almaleh, and Kalichenko, even though Kalichenko had previously been dismissed as a plaintiff. Having reviewed the Second Amended Complaint, the Court again dismisses the claims against the MDC, the BOP, and the Department of Justice and

all claims related to strip searches and harassment from other inmates. Iotova's procedural due process claim related to her confinement to the Special Housing Unit and Iotova's and Almaleh's claims related to the conditions at the MDC in January and February of 2019 may proceed.

## BACKGROUND

The Second Amended Complaint repeats the claims raised in the two prior pleadings, familiarity with which is assumed. This pleading again claims Kalichenko was subjected to daily group strip searches while staff members, including Defendant Doris Evans, watched.[1] Second Am. Compl. ¶ 20.

Iotova renews her claim corrections officers failed to protect her from harassment by other detainees. She claims a particular individual who identifies as a woman but is "legally [a man], by birth and by nature," was assigned to the bed next to her. *Id.* ¶¶ 2, 4. Iotova claims this individual frequently exhibited sexual behaviors making her feel uncomfortable, such as twerking, wearing revealing clothing, "seducing the others," and engaging in self-stimulation. *Id.* ¶ 6. Iotova further claims this individual "started to threaten Iotova, because she addressed him as him not as her" by clapping "his big hands" in her face, and "chasing her in the unit clapping his hands and screaming in her face 'Are you scared, bitch?'" *Id.* ¶ 10. Iotova claims she believed "sooner or later she would be punched or stabbed in the face." *Id.* ¶ 11. She asserts the BOP "stimulated" the harassment by housing "individuals from different gender in different stage of transformation of their gender" in the women's unit. *Id.* ¶ 6. Iotova states she filed administrative complaints regarding the placement of transgender women in the women's unit, but "nobody responded adequately to [the] complaints." *Id.* ¶¶ 22, 28.

---

[1] As Kalichenko was previously dismissed from the lawsuit, the Court will not address her renewed claims related to strip searches and harassment.

Iotova claims she was sent to the SHU for 15 days because other detainees organized "to cop her out." *Id.* ¶¶ 11–13. She does not describe the infraction or the procedures resulting in her confinement in the SHU, except that "unit manager Bridges placed her in SHU." *Id.* ¶ 13. She alleges corrections personnel, including Warden Quay, "refused to provide reason[s] why Iotova was placed in SHU," even after she filed BOP forms for administrative remedies. *Id.* ¶ 16. She asserts personnel have "been placing people in 'SHU' without reason, just for the fun of exercising their power on the inmates." *Id.* She states while she was in the SHU, she did not receive adequate treatment for her mental illness, lost contact with her husband and other family members, and had no connection even with her lawyer. *Id.* ¶ 14. Iotova claims placement in the SHU was particularly onerous for her: "To a white, educated and intelligent woman, who is not sentenced, just detained, who is not violent or [a] danger for anyone, this punishment for Plaintiff Iotova is exceptionally traumatic." *Id.* ¶ 15.

The Second Amended Complaint alleges both Iotova and Almaleh suffered from miserable conditions in January and February 2019, as a result of a fire at the MDC. *Id.* ¶¶ 25–26. Both Plaintiffs claim they lacked heat, electricity, and adequate food and lost all communication with the outside world. Moreover, Almaleh states he was confined to his cell for 24 hours a day for 10 days and did not receive his medications regularly. *Id.* ¶ 25. Iotova claims her air supply was permeated by smoke. *Id.* ¶ 26

Finally, the Second Amended Complaint alleges Iotova and Almaleh suffered discrimination and bullying as a result of their race, religion, and political affiliation. *Id.* ¶¶ 12, 13, 27, 28. Iotova further alleges she was bullied and discriminated against because she is not gay or transgender. *Id.* ¶¶ 11, 13, 28. "The personnel of MDC always supported the group of

men in the unit of the women, caring only for their rights and the rights of the gays and lesbians, rather than the rights of the women." *Id.* ¶ 19.

## DISCUSSION

### A. Standard of Review

28 U.S.C. § 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Moreover, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Moreover, at the pleading stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "detailed

men in the unit of the women, caring only for their rights and the rights of the gays and lesbians, rather than the rights of the women." *Id.* ¶ 19.

## DISCUSSION

### A. Standard of Review

28 U.S.C. § 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Moreover, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Moreover, at the pleading stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "detailed

factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B.  Improper Defendants

Plaintiffs previously named the Metropolitan Detention Center, the Bureau of Prisons, and the Department of Justice as defendants, and these defendants were dismissed under the doctrine of sovereign immunity. Plaintiffs have not provided any new facts to show these defendants waived their sovereign immunity. Accordingly, these defendants are again dismissed.

Further, Defendant Doris Evans is alleged to have participated in the group strip searches forming the basis of Kalichenko's claims. As Kalichenko was already dismissed from this lawsuit and since Evans is not alleged to have committed any injuries against Plaintiffs Iotova and Almaleh, Evans is also dismissed as a defendant in this action.

### C.  Failure to Protect

Plaintiff Iotova renews her claim corrections personnel at the MDC failed to protect her from the harassment of other detainees. The Court explained the elements of a failure-to-protect claim in the February 19, 2020 Order and directed Iotova to allege facts showing corrections officials knew of a specific serious risk to her health and safety and took no action to prevent it. Iotova alleges a detainee behaved sexually provocatively, clapped her hands in her face, chased her, and shouted at her. Iotova claims she felt threatened by this behavior, believing "sooner or later she would be punched or stabbed in the face." However, she does not identify any specific threat to her safety nor allege she informed corrections officers of any specific threat. Instead,

she claims corrections personnel generally encouraged these activities by housing transgender women in the women's unit and failed to adequately respond to her complaints about these policies. These general complaints about policies for housing transgender detainees are not sufficient to alert jail officials about a specific serious risk to health and safety. Accordingly, Iotova has failed to state a claim MDC officials failed to protect her in violation of the Fourteenth Amendment.

### D.  SHU Claims

Plaintiff Iotova also previously raised her claims about the SHU. Now she alleges she was confined to the SHU without adequate due process. Iotova also claims her 15 days in the SHU were particularly onerous for her because she is "a white, educated and intelligent woman." While the Court categorically rejects Iotova's claim that her race and educational background entitle her to special treatment in jail, her allegation that she was placed in the SHU by a unit manager and without being told why does merit further inquiry. Where a liberty interest is implicated, a prisoner is generally entitled to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). The Second Amended Complaint suggests Iotova was sent to the SHU without any of those procedures. Accordingly, this claim may proceed against the Warden and the Jane or John Doe Unit Manager.

### E. Conditions at the MDC in January and February of 2019

Both Iotova and Almaleh allege they suffered particular specific hardships following a fire impacting conditions at the MDC during January and February of 2019. These claims may proceed against the Warden and the Jane or John Doe officers responsible for these conditions.

### CONCLUSION

For the reasons set forth above, all the claims against the MDC, the BOP, the Department of Justice, and Doris Evans are dismissed pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). No summonses shall issue against these Defendants.

Plaintiff's claims shall proceed against Warden Quay and the Jane and John Doe corrections officers. The Court directs the Clerk of Court to issue a summons against the Warden and directs the United States Marshals Service to serve the summons and complaint.[2] The Clerk shall send a copy of this Order and the Complaint to the United States Attorney's Office and to Plaintiffs Iotova and Almaleh.

Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Court requests the United States Attorney's Office attempt to ascertain the full names and service addresses of the unit managers, possibly including "Bridges," who were responsible for the Women's Unit during Iotova's detention in 2018 and 2019. The United States Attorney's Office need not undertake to defend or indemnify these individuals at this juncture. This Order merely provides a means by which plaintiffs may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*. The United States Attorney's Office is hereby requested to produce the information specified above within 30 days of the date of this Order. Once this information is provided, Plaintiffs' Second Amended Complaint shall be deemed amended to

---

[2] Pursuant to Administrative Order No. 2020-12 of the Chief Judge of the Eastern District of New York, suspending United States Marshal or deputy marshal service, there will likely be delays in official service.

reflect the full names of the defendants, additional summonses shall be issued, and the Marshals Service shall serve these defendants.

The Court refers this matter to Magistrate Judge Lois Bloom for pretrial supervision. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

s/ WFK
_____
WILLIAM F. KUNTZ, II
United States District Judge

Dated: April 1, 2020
      Brooklyn, New York