UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

ANTOANETA IOTOVA and ISSAK ALMALEH,  :
                                             :

                             Plaintiffs,  :

                                   :  <u>REPORT AND</u>

          -against-  :  <u>RECOMMENDATION</u>

                                     :

WARDEN HERMAN E. QUAY, JANE DOE, JOHN  :  19-CV-1957 (DG)(MMH)
DOE, UNITED STATES OF AMERICA, UNIT  :
MANAGER MYRNA BRIDGES, and OFFICER  :
KEISHA SPIVEY,  :

                                     :

                            Defendants.  :

-------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

      *Pro se* Plaintiffs Antoaneta Iotova and Issak Almaleh initiated this civil rights action alleging unconstitutional conditions of confinement while they were pretrial detainees at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (*See generally* Compl., ECF No. 1.)[1] The Court liberally construed the pleadings to raise claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and eliminated claims and parties. In the Third Amended Complaint, Plaintiffs assert claims against Defendants United States of America, Herman E. Quay, Myrna Bridges, and Keisha Spivey. (*See generally* 3d Am. Compl. ("TAC"), ECF No. 70.)

      Before the Court is Defendants' motion to dismiss the TAC for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and for failure to

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination ("___ of ___") in the ECF header unless otherwise noted.

state a claim, pursuant to Rule 12(b)(6).  (*See generally* Notice of Mot., ECF No. 118.)[2]  The

Honorable Diane Gujarati referred the motion for report and recommendation.  For the reasons

stated below, the Court respectfully recommends that: (1) the motion to dismiss should be

**granted**, (2) the Third Amended Complaint should be dismissed with prejudice, and (3) leave

to amend should be **denied** as futile.

## I.    BACKGROUND

Plaintiffs initiated this suit on March 26, 2019.  (*See generally* Compl., ECF No. 1.)

The Court assumes the parties' familiarity with prior proceedings and rulings in this case.[3]

The following facts are taken from the pleadings, which are accepted as true; the exhibits

attached to Defendants' motion to dismiss that are integral to the Third Amended Complaint

and incorporated by reference; and records of which the Court may take judicial notice for the

purpose of this motion under Rules 12(b)(1) and 12(b)(6).  *See Dorce v. City of New York*, 2

F.4th 82, 88 n.2 (2d Cir. 2021); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67,

75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion

to dismiss under Rule 12(b)(6)[.]").

---

[2] The defense submission includes a memorandum of law (Defs.' Mem., ECF No. 118-1), the Declaration of Shana C. Priore (Priore Decl., ECF No. 118-2 at 1–2), and its five exhibits (Priore Decl. Exs. A–F, ECF No. 118-2 at 3–41).  Plaintiffs filed an opposition brief (Pls.' Opp., ECF No. 124) to which Defendants replied (Defs.' Reply, ECF No. 126).  Plaintiffs then submitted two nearly identical sur-replies without seeking leave of the Court.  (ECF Nos. 129, 130.)  The Court accepts these submissions in light of Plaintiffs' *pro se* status and because they repeat arguments set forth in Plaintiffs' opposition brief.  Further, as described below, the parties submitted supplemental briefing at the Court's request.  (*See* Defs.' Suppl. Ltr., ECF No. 133 & Pls.' Suppl. Ltr., ECF No. 134.)

[3] *See, e.g.*, *Iotova v. Metro. Det. Ctr.*, No. 19-CV-1957 (WFK), 2019 U.S. Dist. LEXIS 252994 (E.D.N.Y. July 9, 2019) ("*Iotova I*"); *Iotova v. Quay*, No. 19-CV-1957 (WFK), 2020 WL 818906 (E.D.N.Y. Feb. 19, 2020) ("*Iotova II*"); *Iotova v. Quay*, No. 19-CV-1957 (WFK)(LB), 2020 WL 1643637 (E.D.N.Y. Apr. 1, 2020) ("*Iotova III*").

### A.    Factual Allegations

Iotova and Almaleh, a married couple, were separately detained at the MDC from approximately April 2018 to July 2019 and January 2018 to July 2019, respectively.  (TAC, ECF No. 70 ¶ 1.)  Iotova was placed in a women's unit, while Almaleh was housed with other male inmates.  (*Id.* ¶ 2.)  During this period, Quay was the MDC Warden, Bridges was Unit Manager in Iotova's unit, and Spivey was a corrections officer assigned to Iotova's unit.  (*See id.* ¶ 18.)

Iotova alleges that she was housed with approximately 40 other inmates, including transgender women, one of whom slept near her bed.  (*Id.* ¶¶ 3–7.)  In December 2018, Iotova asked Spivey for permission to get dressed in a bathroom, specifically to don her bra in private, because male MDC officers would be at the women's unit for the unit count.  (*Id.* ¶ 25.)  Spivey denied the request and directed Iotova to change next to her bed, stating "we are all women." (*Id.*)  Spivey further wanted to place Iotova in the Special Housing Unit ("SHU") at the MDC as punishment for disrupting the count and would not let Iotova visit the bathroom.  (*Id.*)

From approximately late January 2019 to mid-February 2019, Bridges ordered Iotova to be confined in the Special Housing Unit ("SHU") at the MDC for 15 days.  (*Id.* ¶¶ 14–18.)  Iotova's unit personnel did not explain why she was placed in the SHU.  (*Id.* ¶ 18.)  According to Iotova, she was placed in the SHU because a Black transgender inmate conspired with other inmates to bully and harass Iotova, eventually leading to an internal complaint known as a "cop out" filed against her.  (*Id.* ¶ 14.)  Iotova claims the Black personnel at the MDC sympathized with the transgender inmates and their accomplices and encouraged their behavior against Iotova because of her race, sexual orientation, conservative religious beliefs, and ethnicity.  (*Id.* ¶¶ 13–15.)  While in the SHU, Iotova did not receive adequate heat,

electricity, mental health treatment, or calls with counsel, and was served peanut butter three times even though she is allergic. (*Id.* ¶¶ 15–16.) Further, in approximately late January 2019, while Iotova was in the SHU, a fire at the MDC created a power outage and smoky air conditions at the facility. (*Id.* ¶ 28.) Iotova claims that she had difficulty breathing due to the contaminated air. (*Id.*¶ 17.)

After leaving the SHU, Iotova returned to the women's unit, where the population of transgender women had allegedly increased to "10%" in her absence. (*Id.* ¶ 19.) She claims that the inmates acted in sexually aggressive ways that compounded Iotova's "psychological trauma" by displaying their breasts and entering the cisgender women's beds at night to touch them sexually. (*Id.* ¶¶ 8–13, 19–21.) In approximately April and May 2019, Iotova began fainting daily and experienced psychological damage and anemia because of these conditions. (*Id.* ¶ 29.) Unidentified MDC medical staff delayed in administering a blood test and then delayed treatment until Iotova fainted several times and was bedridden. (*Id.*)

Like Iotova, Almaleh was adversely impacted by the January 2019 fire. (*Id.* ¶ 26) Almaleh was kept in his cell for 24 hours a day for ten days with only one meal per day and no electricity, heat, or regular access to medicine, telephones, and computers. (*Id.*) These conditions caused blindness in one of his eyes and severely restricted his mobility. (*Id.* ¶ 27.)

## B.    Administrative Remedies

On February 27, 2019, Iotova filed an administrative remedy form to the MDC for "compensation for time spent in SHU." (Priore Decl. Ex. C, ECF No.118-2 at 14.) This form was rejected by MDC staff on the basis that the Administrative Remedy Program cannot be used to request monetary compensation. (*Id.*) On March 7, 2019, Iotova filed another remedy

form wanting to know why "he [*sic*] was in SHU." (*Id.* at 15.)  This form was also rejected, but the reason was not recorded.  (*Id.*)

On same day, March 7, 2019, Iotova filed a Standard Form 95 Administrative Claim ("SF-95") to the Federal Bureau of Prisons ("BOP") claiming $10 million for psychological trauma.  (Priore Decl. Ex. A, ECF No. 118-2 at 4–5.)  Iotova alleged that she was housed with "men transgender who bullied me and when I complained I ended in SHU, that deteriorated my psychological condition."  (*Id.* at 4.)  She listed "all the inmates of unit 3N, MDC, incl[uding] officers" as witnesses.  (*Id.*)  This administrative tort claim was denied on March 22, 2019, for failure to allege "an identifiable physical injury actionable under the Federal Tort Claims Act."  (Priore Decl. Ex. B, ECF No. 118-2 at 7.)  The denial letter also informed Iotova that she may bring action against the United States within six months of the date of the letter. (*Id.*)

Between January 2019 and March 2020, Almaleh filed several administrative remedy forms with the MDC related to "not receiving meals," "food issue," "medication issue," "wife's conditions of confinement," and others.  (Priore Decl. Ex. F, ECF No. 118-2 at 31–41.)  These forms were rejected on the same basis as Iotova's that inmates could not request monetary compensation through the Administrative Remedy Program.  (*Id.*)

On December 3, 2019, more than eight months after the filing of the complaint, counsel submitted an SF-95 on Almaleh's behalf describing his exposure to the harsh conditions at the MDC during the power outage from January 27, 2019 through February 3, 2019 and seeking $1 million.  (Priore Decl. Ex. D, ECF No. 118-2 at 18, 21).  The BOP officially received the SF-95 on December 6, 2019.  (*Id.*)  On November 10, 2020, the BOP denied Almaleh's claim after an investigation, including a review of medical records.  (Priore Decl. Ex. E, ECF

No. 118-2 at 26.)  The denial letter stated that "[t]here is no evidence Mr. Almaleh experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee." (*Id.*)

### C.    Procedural History

#### 1.    Complaint

On March 26, 2019, Plaintiffs and Olena Kalichenko, another pretrial detainee at the MDC, filed the *pro se* Complaint against the MDC, the Bureau of Prisons, and the Department of Justice.  (*See generally* Compl., ECF No. 1.)  The Court construed the Complaint to allege *Bivens* claims because Plaintiffs and Kalichenko alleged that their rights were violated by persons acting under color of federal law.  *Iotova I*, 2019 U.S. Dist. LEXIS 252994.  However, the Court dismissed the Complaint with leave to amend because Plaintiffs and Kalichenko failed to demonstrate the requisite waiver of sovereign immunity by the United States for claims against the government or its agencies and did not allege any personal involvement or name any individual federal officials as defendants.  (*Id.* at *3–5.)

#### 2.    First and Second Amended Complaints

Plaintiffs and Kalichenko filed the Amended Complaint against MDC Warden Quay, Officer Doris Evans, and two Doe defendants on August 1, 2019, alleging substantially similar claims as in the Complaint.  (*See generally* 1st Am. Compl. ("FAC"), ECF No. 24.)  In the same pleading, Kalichenko filed a separate claim against Evans related to the strip searches that Evans conducted.  (*Id.* at 6–15.)  The Court construed the FAC as raising *Bivens* claims and again *sua sponte* dismissed them.  *Iotova II*, 2020 WL 818906, at *1.  First, the Court dismissed Kalichenko from the case because she failed to state a viable Fourth Amendment claim.  *Id.* at *3.  Second, the Court construed Iotova's claims that she was housed with

transgender inmates to her detriment as a failure-to-protect claim under the Due Process Clause of the Fourteenth Amendment and granted leave to amend to "allege sufficient facts that correction officials were deliberately indifferent because they knew of a specific serious risk to her health and safety during her detention and took no action to prevent it." *Id.* at *4. The Court also construed Iotova's claim of arbitrary detention in the SHU as either a substantive or procedural due process claim under the Fourteenth Amendment, dismissed the claim for failure to allege sufficient facts suggesting deprivation of a liberty interest, and granted leave to amend. *Id.* at *4–5. Finally, the Court dismissed Almaleh's claims related to the January 2019 fire because he failed to allege "specific facts stating how he was personally affected by those events," and granted leave to amend. *Id.* at *5.

Despite the Court's prior orders, Plainitffs and Kalichenko filed the Second Amended Complaint on March 19, 2020, asserting the same allegations against Quay, the MDC, the BOP, the DOJ, Evans, and Jane and John Doe as in the prior pleadings. (*See generally* 2d Am. Compl. ("SAC"), ECF No. 49.) Accordingly, the Court dismissed the MDC, the BOP, the DOJ, and Evans from the action. *Iotova III*, 2020 WL 1643637, at *3. The Court also dismissed Iotova's claim that MDC staff failed to protect her from other detainees' harassment because Iotova failed to allege facts showing that the staff knew of a specific serious risk to her health and safety and took no action to prevent it. *Id.* However, the Court permitted the following claims against Quay and the John and Jane Doe defendants: (1) Iotova's procedural due process claim regarding confinement in the SHU and (2) Iotova and Almaleh's claims concerning the conditions at MDC in early 2019. *Id.* at *3–4. The Court ordered counsel for the government to identify the Doe defendants, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). *Id.* at *4.

On July 16, 2020, the Court held an initial conference and allowed Iotova and Almaleh to amend the SAC to include an FTCA claim against the United States and ordered them not to include any previously dismissed claims.  (July 20, 2020 Order, ECF No. 64 at 1.)  As a result, the only remaining defendants were Quay, the United States, and the Doe Defendants.

### 3.    Third Amended Complaint

Plaintiffs filed the Third Amended Complaint on August 3, 2020 against Quay, the United States, the MDC, the BOP, DOJ, Evans, Bridges, and Spivey, repeating the claims in the prior complaints, despite the Court's previous orders.[4]  (*See generally* TAC, ECF No. 70.)  The Court summarily dismissed the MDC, BOP, DOJ, and Evans as defendants.  (Aug. 17, 2020 Order, ECF No. 72 at 1 n.1.)

Defendants now move to dismiss the TAC for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  (*See generally* Def. Mem., ECF No. 118-1.)

## II.    DISCUSSION

### A.    Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power

---

[4] Plaintiffs concede that the Court dismissed Kalichenko but include her allegations in the TAC. (TAC, ECF No. 70 ¶¶ 1, 4, 9, 23, 28, 30 & at 20.)  The Court respectfully recommends that any claims asserted on Kalichenko's behalf should be dismissed.

Additionally, Defendants include Iotova's allegations that MDC personnel failed to protect her from the harassment of transgender inmates in the women's housing unit. (Def. Mem., ECF No. 118-1 at 24–25.)  However, the court already dismissed this claim from the FAC and SAC, and directed both Plaintiffs not to include any dismissed claims in the TAC.  *Iotova II*, 2020 WL 1643637, at *3-4; (July 20, 2020 Order, ECF No. 64 at 1.)  The Court therefore will not address further arguments regarding this claim.

to adjudicate it." *Tigano v. United States*, 527 F. Supp. 3d 232, 242 (E.D.N.Y. 2021) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) "But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (cleaned up). "The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tigano*, 527 F. Supp. 3d at 242 (cleaned up).

Dismissal under Rule 12(b)(6) is warranted when the complaint does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its face." *Mazzei v. The Money Store*, 62 F.4th 88, 92 (2d Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.'" *Luna v. N. Babylon Teacher's Org.*, 11 F. Supp. 3d 396, 401 (E.D.N.Y. 2014) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)).

Because Plaintiffs are proceeding *pro se*, their pleadings be interpreted to "raise the strongest arguments that [they] suggest[]." *Pierre v. City of New York*, 531 F. Supp. 3d 620,

624 (E.D.N.Y. 2021) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). Therefore, in construing its strongest legal arguments, the TAC is interpreted to allege tort claims against Defendant United States under the FTCA and constitutional claims against Defendants Quay, Bridges, and Spivey under *Bivens*.

### B.    FTCA Claims

The TAC raises the following negligence claims against the United States under the FTCA: (1) placement of Iotova in a unit with transgender women inmates (TAC, ECF No. 70 ¶¶ 8–9, 11, 13); (2) placement of Iotova in the SHU despite her psychological condition (*id.* ¶¶ 14–15); (3) placement of Iotova and Almaleh, a married couple, in separate housing units (*id.* ¶ 30); and (4) hiring of Black correctional staff who allegedly discriminated against Iotova (*id.* at 18–19 ¶ 2). The Court respectfully recommends that these claims should be denied for lack of subject matter jurisdiction.

"To exercise subject matter jurisdiction in a tort action against the United States, the court must find that the federal government has waived its sovereign immunity." *Taveras v. Hasty*, No. CIV.A.CV-02-1307 (DGT), 2005 WL 1594330, at *3 (E.D.N.Y. July 7, 2005). Through the FTCA, the government has consented to be sued in tort cases under specified circumstances. *See Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012). This limited waiver applies to "claims against the United States, for money damages . . . for . . . injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Id.* (quoting 28 U.S.C. § 1346(b)(1)); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.").

Defendants maintain that Plaintiffs' tort claims should be dismissed because of these jurisdictional defects: (1) Plaintiffs failed to exhaust administrative remedies and (2) even if they exhausted remedies, any alleged acts of negligence by Defendants fall within the FTCA's discretionary function exception pursuant to 28 U.S.C. § 2680(a).  (Def. Mem., ECF No. 118-1 at 32–43; Defs.' Suppl. Ltr., ECF No. 133 at 3–5.)

### 1.    Exhaustion

Before filing an FTCA action, a plaintiff must exhaust administrative remedies with the appropriate federal agency.  *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019).  This requirement is jurisdictional and cannot be waived.  *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).  Specifically, a tort claim must be "presented" to the agency in writing "within two years after the claim accrues" or "within six months after the date the agency mails notice of final denial of the claim."  *See* 28 U.S.C. §§ 2401(b), 2675(a).  If the plaintiff prematurely files an FTCA action, that claim "should be dismissed without prejudice, even where those claims would be ripe if re-filed at a later date."  *Manchanda v. Lewis*, No. 21-1088-CV, 2021 WL 5986877, at *5 & n.3 (2d Cir. Dec. 17, 2021) (summ. order) (affirming district court's determination that plaintiffs failed to exhaust administrative remedies when they filed a SF-95 form weeks after initial filing of lawsuit).

An inmate may "present" a tort claim to the BOP by submitting an executed SF-95 or "other written notification," accompanied by "a claim for money damages in a sum certain for

injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident[.]"  28 C.F.R. § 14.2(a).  The presentment requirement ensures that the agency is given "sufficient notice of [the] claim to permit the agency to conduct an inquiry into the merits of [the] demand for compensation."  *Collins v. United States*, 996 F.3d 102, 110 (2d Cir. 2021).  The notice must provide "sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement."  *Id.* at 119.

In this case, Defendants argue that Iotova's FTCA claims must fail because her SF-95, while timely under 28 U.S.C. § 2401(b), was statutorily inadequate to give notice to the BOP of her claims.  (*See* Def. Mem., ECF No. 118-1 at 36–37.)  Iotova's SF-95, with receipt date of March 7, 2019, complained of the "men transgender [*sic*] who bullied me and when I complained I ended in SHU, that deteriorated my psychological condition."  (Priore Decl. Ex. A, ECF No. 118-2 at 4–5.)  The SF-95 did not allege specific instances of bullying nor detail the nature of Iotova's psychological harm and the physical injuries arising from that harm to allow the BOP to reasonably understand and investigate her claims.  The BOP's denial letter explains that while Iotova has alleged to be "the subject of severe bullying and discrimination" and that her "severe psychological trauma affected [her] competency," her claim must be denied because she has not alleged "an identifiable physical injury actionable" under the FTCA.  (Priore Decl. Ex. B, ECF No. 118-2 at 7.)

Iotova also filed at least two administrative remedy forms to the MDC related to her placement in the SHU.  One form, dated February 27, 2019, sought "compensation for time spent in SHU" and another, dated March 7, 2019, requested the reason for why "he [*sic*] was

in the SHU." (Priore Decl. Ex. C, ECF No.118-2 at 14–15.) These forms, which also do not state the basis of Iotova's constitutional claims for unlawful detention in the SHU, were rejected because the Administrative Remedy Program at the MDC cannot be used to request monetary compensation. Under the Prison Litigation Reform Act ("PLRA"), inmates are required to comply with a multi-step administrative grievance process.[5] *Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007) (citing 28 C.F.R. §§ 542.10–542.10(a) & 542.13–15). "Exhaustion is mandatory under the statute unless the administrative proceedings are unavailable." *Lipscomb v. Hufford*, No. 14-CV-6562 (NSR), 2017 WL 3267732, at *7 (S.D.N.Y. July 28, 2017) (citing *Ross v. Blake*, 578 U.S. 632, 638 (2016)). Iotova has not alleged that she sought any appeal or reconsideration of these denials or otherwise alleged that she was prevented from doing so. Accordingly, because Iotova has not shown that she exhausted administrative remedies under the PLRA, she has not met the burden of showing that this Court has subject matter jurisdiction over her FTCA claims.

As to Almaleh's claims, Defendants argue that his claims are also jurisdictionally barred because Almaleh did not file his SF-95 until months after the Complaint was filed. (*See* Def. Mem., ECF No. 118-1 at 33–36.) Their argument is correct as to the delayed timing of the SF-95. Almaleh initiated this suit on March 26, 2019, but his SF-95 form was filed by

---

[5] This process requires an inmate to (1) present his concern informally to a staff member, who must attempt to resolve the concern; (2) if the inmate's issue cannot be resolved at step one, the inmate must submit an Administrative Remedy Request (using a BP–9 form) to a designated staff member (usually the warden) within 20 days following the date on which the basis for the request occurred; (3) if the inmate is dissatisfied with the warden's response, the inmate can submit an appeal to the Regional Director (using a BP–10 form) within 20 days of the warden's response; and (4) if the inmate is dissatisfied with the Regional Director's response, he must file an appeal with the Office of General Counsel (using a BP–11 form) within 30 days of the Regional Director's response. *See* 28 C.F.R. §§ 542.10–542.15.

his attorney months later, on December 3, 2019.  (Priore Decl. Ex. D, ECF No. 118-2 at 18, 21).  This clearly violates the presentment requirement under 28 U.S.C. § 2675.

The Court, however, notes that Almaleh, like Iotova, filed several administrative remedy forms to the MDC before March 26, 2019 regarding conditions of his confinement. (Priore Decl. Ex. F, ECF No. 118-2 at 31.)  Specifically, on January 7, 2019, he filed a form to complain about "not receiving meals," which was rejected on February 5, 2019.  (*Id.*)  On February 14, 2019, Almaleh submitted two forms regarding "medication issue" and "food issue," which were both rejected the next day.  (*Id.* at 32.)  Almaleh filed several more, including one on March 20, 2019, which complained about "wife's conditions of confinement," which was rejected on the same day.  (*Id.* at 36.)  These grievance forms do not appear to provide sufficient facts for the agency to reasonably understand what it must investigate to address Almaleh's concerns.  Almaleh also has not pleaded that he sought any appeal or reconsideration of the denials.  Therefore, like Iotova's claims, Almaleh has not sufficiently alleged that he completed the four-step process required under the PLRA.

For these reasons, the Court respectfully recommends that Plaintiffs' FTCA claims should be jurisdictionally barred for failure to exhaust administrative remedies.

## 2.   Discretionary Function Exception

Even if Plaintiffs had exhausted administrative remedies, their claims should still be barred by the discretionary function exception ("DFE") to the FTCA.

The DFE limits the government's liability for claims "based upon the exercise or performance or the failure to exercise or to perform a discretionary function or duty on part of a federal agency or an employee of the government."  28 U.S.C. § 2680(a).  "Courts do not retain subject matter jurisdiction over claims that fall within the [DFE.]"  *Maghen v. United*

*States*, No. 19 CV 6464 (ILG), 2021 WL 4172060, at *2 (E.D.N.Y. Sept. 14, 2021) (citing *Huntress v. United States*, 810 F. App'x 74, 76 (2d Cir. 2020)).  Applying Supreme Court precedent, "the DFE bars suit only if two conditions are met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citing *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) and *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)).

As to the first prong of the *Berkovitz-Gaubert* test, the BOP is "statutorily vested with 'charge of the management and regulation of all Federal penal and correctional institutions,' and must 'provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States[.]'" *Marley v. United States*, No. 18 CV 3495 (EK)(RML), 2022 WL 1183330, at *8 (E.D.N.Y. Apr. 20, 2022) (quoting 18 U.S.C. § 4042(a)), *adopted by* 2022 WL 1720432 (E.D.N.Y. May 27, 2022). Courts in this Circuit have held that Section 4042(a) provides BOP officials with significant discretion to administer their duties as they see fit.  *See, e.g.*, *Fernandini v. United States*, No. 15 CV 3843, 2019 WL 1033797, at *4 (S.D.N.Y. Mar. 5, 2019) (concluding that "decisions regarding the best way to comply with this broad statutory mandate are discretionary in nature"); *Ojo v. United States*, No. 16-CV-4112 (MKB)(LB), 2019 WL

3852391, at *7 (E.D.N.Y. Aug. 15, 2019) (collecting cases), *adopted by* 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019).

The second prong requires that the challenged conduct is "based on 'considerations of public policy,' since the purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Marley*, 2022 WL 1183330, at *8 (quoting *Berkovitz*, 486 U.S. at 538). "[I]f a regulation, rule, or statute allows the employee discretion, a strong presumption arises that the employee's acts are grounded in policy when exercising that discretion." *Enigwe v. Zenk*, No. 03-CV-854 CBA, 2007 WL 2713849, at *9 (E.D.N.Y. Sept. 14, 2007) (cleaned up).

Courts in this Circuit have routinely held that inmate housing and placement decisions, such as the housing decisions underlying Plaintiffs' claims, are a "permissible exercise of policy judgment" that the DFE was designed to insulate from liability. *See, e.g.*, *Ojo*, 2019 WL 3852391, at *8 ("Generally, courts have deemed the federal government immune with respect to claims that lie in BOP's decision to place an inmate in SHU away from the prison's general population."); *Nabe v. United States*, No. 10-CV-3232 (NGG)(VPP), 2014 WL 4678249, at *5 (E.D.N.Y. Sept. 19, 2014) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.") (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981)); *Young v. United States*, No. 12-CV-2342 (ARR)(SG), 2014 WL 1153911, at *11 n.5 (E.D.N.Y. Mar. 20, 2014) ("Decisions about which inmates must be separated from other inmates are susceptible to policy analysis, as they involve a balancing of a number of public policy considerations including the inmate safety, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited

resources.").  These decisions, including unit assignments and whether an inmate should be moved to the SHU, are a result of the "informed discretion of an individual corrections officer," and should be insulated from the "judicial second-guessing."  *Nabe*, 2014 WL 4678249, at *5.

Likewise, "claims for negligent hiring and supervision fall squarely within the FTCA's [DFE]" because such claims "involve both judgment and public policy considerations." *Tigano*, 527 F. Supp. 3d at 255 (collecting cases); *see Searles v. United States*, No. 21-CV-6570 (RA), 2022 WL 2829912, at *3 (S.D.N.Y. July 20, 2022) (dismissing plaintiff's claim that the government negligently employed "unfit and incompetent" prison staff because "issues of employee hiring, training, supervision, and retention" are discretionary); *see also Ojo*, 2019 WL 3852391, at *7 (dismissing plaintiff's allegation that BOP "sanction[ed]" a practice "of selecting inmates to arrest, detain, assault . . . based on their race and/or nationality" under the FTCA because "training and supervising BOP personnel is inherently discretionary and involves matters of public policy.").

For these reasons, the Court respectfully recommends that Plaintiffs' negligence claims under the FTCA should be dismissed for lack of subject matter jurisdiction.[6]

### C.    *Bivens* Claims

The TAC also raises the following *Bivens* claims against Quay, Bridges, and Spivey acting under color of federal law: (1) a Fourteenth Amendment claim for placing Iotova in the

---

[6] To the extent that Plaintiffs allege negligence related to conditions of confinement during the MDC fire and subsequent power outage in late January 2019, those claims should also be dismissed for failure to exhaust administrative remedies.  Iotova's SF-95, filed on March 7, 2019, only raises claims of bullying and discrimination and fails to mention any harm arising from the MDC fire. (*See* Priore Decl. Ex. A, ECF No. 118-2 at 4.)  The administrative remedy forms that Iotova filed also do not raise those claims.  (Priore Decl. Ex. C, ECF No. 118-2 at 13–16.)  On the other hand,

SHU without procedural due process (TAC, ECF No. 70 ¶¶ 13–18) and (2) a Fifth Amendment claim for high-risk conditions of confinement at the MDC in January and February 2019 after the fire and power outage. (*Id.* ¶¶ 17, 26–29.)

A *Bivens* claim allows a plaintiff to sue a federal actor as a recourse to a constitutional violation through an implied cause of action. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017); *Iqbal*, 556 U.S. at 675. To state a *Bivens* claim, a plaintiff "must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). The Supreme Court recognizes only three *Bivens* contexts: "(1) unreasonable search and seizure in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 388; (2) employment discrimination in violation of the due process clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) inadequate medical treatment of an inmate in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980)." *Sclafani v. Kane*, No. 20-CV-0463 (EK)(VMS), 2020 WL 4676414, at *2 (E.D.N.Y. Aug. 12, 2020).

To determine whether *Bivens* claims can survive a motion to dismiss, courts first ask "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the [U.S. Supreme] Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar*, 137 S. Ct. at 1859–60). The following non-exhaustive list of differences can be used to characterize a given context as "new": "[t]he rank

---

Almaleh's SF-95 primarily concerns the harsh conditions of confinement between January 27, 2019 and February 3, 2019. However, as discussed earlier, his SF-95 was filed months after the complaint filed in this case and therefore, the Court must dismiss this claim for his failure to exhaust remedies. (*See* § II.B.1., *supra*.)

of the officers involved; [2] the constitutional right at issue; [3] the generality or specificity of the official action; [4] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [5] the statutory or other legal mandate under which the officer was operating; [6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or [7] the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 137 S. Ct. at 1859–60.

Second, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 137 S. Ct. at 1858). Some examples of "special factors" that "counsel against allowing a *Bivens* action" include (1) "Congress has created 'any alternative, existing process for protecting the [injured party's] interest'"; (2) "Congress has designed its regulatory authority in a guarded way"' or (3) the policy requires the court to question "the formulation and implementation of a general policy." *Ziglar*, 137 S. Ct. at 1858, 1860 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

### 1.    Fourteenth Amendment Claim

Iotova alleges that fellow detained individuals conspired against her resulting in her placement in the SHU for fifteen days at the end of January 2019 until the beginning of February 2019. (TAC ¶¶ 14–15, 17.) Iotova claims that Unit Manager Bridges "is directly responsible and ordered the placement of [I]otova in 'SHU' . . . ." (*Id.* ¶ 14.) Iotova also alleges that Bridges and Spivey of Unit 3N "didn't follow the orders of the judge Forrest about

Iotova['s] psychological condition, neither the forensic report of Metropolitan Correctional Center, Manhattan about the health of Iotova about her placement in SHU." (*Id.* ¶ 15.) Plaintiff also alleges that "[t]he personnel of the institution, warden Herman Quay, the Captain John Doe and the other managers refused to provide due process of the law and the procedures of Bureau of Prisons for placing in SHU." (*Id.* ¶ 18.)

Iotova's claim that she was denied due process when she was placed in the SHU without a clear reason and in violation of other court or facility directives presents a new *Bivens* context. While the constitutional right at issue, procedural due process under the Fourteenth Amendment, is similar to *Carlson*, the similarity to a recognized *Bivens* context does not spare the claim from being considered a "new context." *Ziglar*, 137 S. Ct. at 1859 ("Even though the right and the mechanism of injury were the same as they were in *Carlson*, the Court held that the contexts were different.") (describing *Corr. Servs. Corp. v. Malekso*, 534 U.S. 61, 74 (2001)); *see also Cannenier v. Skipper-Scott*, No. 18-CV-2383 (LGS), 2019 WL 764795, at *5 (S.D.N.Y. Feb. 20, 2019) ("The Supreme Court has recognized only three *Bivens* contexts, none of which include . . . improper placement in a special housing unit."); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 59 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) (finding a "due process claim relating to the alleged failure by prison employees to conduct 'meaningful' reviews of a plaintiff's placement in the SHU while in federal custody" presents a new *Bivens* context).

Second, at least two special factors counsel against expanding a *Bivens* remedy: available alternative methods of relief and congressional legislation to protect the rights of detained persons. *Ziglar*, 137 S. Ct. at 1863 ("when alternative methods of relief are available, a *Bivens* remedy usually is not"); *Hernandez*, 140 S. Ct. at 748 ("[The Westfall] Act makes

the [FTCA] the exclusive remedy for most claims against Government employees arising out of their official conduct.") (citations omitted); *Sanford v. Bruno*, No. 17-CV-5132 (BMC), 2018 WL 2198759, at *6 (E.D.N.Y. May 14, 2018) ("Deprivations of constitutional rights while in custody can generally be addressed by habeas corpus relief, 28 U.S.C. § 2241, mandating the alleviation of the unconstitutional condition or the release of the prisoner."). Indeed, Plaintiffs availed themselves of multiple avenues for relief.  Iotova lodged several complaints through the MDC Administrative Remedy Program to protest her placement in the SHU. (Priore Decl. Ex. C, ECF No. 118-2 at 14–15.)  And by filing the TAC, Plaintiff chose to pursue their claims under the FTCA, even though the Complaint did not assert such claims. While these options might offer slightly different remedies than a *Bivens* action, "the relevant question is not whether a *Bivens* action would "disrup[t]" a remedial scheme . . . [n]or does it matter that existing remedies do not provide complete relief."  *Egbert*, 142 S. Ct. at 1804; *see also Gonzalez*, 269 F. Supp. at 62 ("[T]here is no precedent suggesting that the unavailability of money is a factor that carries any weight in determining the expansion of a *Bivens* remedy."). Therefore, the Court respectfully recommends dismissal of Iotova's procedural due process claim arising from her placement in the SHU.

## 2. Fifth Amendment Claim

Plaintiffs' claims of mistreatment in federal pretrial detention are evaluated under the Due Process Clause of the Fifth Amendment.  *Laurent v. Borecky*, No. 17-CV-3300 (PKC)(LB), 2018 WL 2973386, at *2 (E.D.N.Y. June 12, 2018); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 381 (S.D.N.Y. 2011) ("Since [Plaintiff] was only a pre-trial detainee . . . his cruel and unusual punishment claims arise under the Fifth Amendment's Due Process Clause and not the Eighth Amendment.").  Both Plaintiffs allege they experienced a lack of heat, an

unpredictable and reduced food supply, periods of darkness, limitations of their ability to communicate with the outside world either by telephone or internet, and inadequate health care treatment following a fire and subsequent power outage at the MDC in January 2019.  (TAC ¶¶ 16, 26.)

Plaintiffs' non-medical claims of harsh prison conditions—including lack of heat, an unpredictable and reduced food supply, periods of darkness, and limitations on communication with the outside world—during the January 2019 fire clearly present a new *Bivens* context. *Scott v. Quay*, No. 19-CV-1075 (MKB)(SMG), 2020 WL 8611292, at *4 (E.D.N.Y. Nov. 16, 2020), adopted by Dkt. Order Adopting R. & R., *Scott v. Quay*, No. 19-CV-1075 (MKB)(SMG) (E.D.N.Y. Mar. 22, 2021) (Korman, J.).  In *Scott*, several pretrial detainees at the MDC alleged similar conditions of confinement related to the January 2019 fire, which the court compared to the allegations in *Ziglar v. Abbasi*:

> As in this case, plaintiffs in [*Ziglar v. Abbasi*] complained of harsh conditions of confinement. Some of the complaints made in [*Ziglar*] resemble those made by plaintiffs here, including allegations that detainees were held in their cells for 23 hours each day, denied access to basic hygiene products in their cells, and barred from communicating with the outside world. The [*Ziglar*] plaintiffs sought to hold the facility's warden responsible for allowing these harsh conditions to occur, as plaintiffs do here.  However, the Court held that such claims present a new *Bivens* context because they "bear little resemblance" to the three *Bivens* claims that were previously approved by the Court: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."

*Id.* at *4 (citing *Ziglar*, 137 S. Ct. at 1853, 1860, 1863); *see also Gonzalez*, 269 F. Supp. 3d at 64 (plaintiff's complaints regarding outdoor recreation time, cleaning supplies, dirty or used razors, and dirty or used clothing present a new context compared to *Carlson*).  For the same reasons stated by the Court in *Scott*, which distinguished the conditions of confinement claims

under the Fifth and Eighth Amendment from those of *Carlson*, Plaintiffs' non-medical claims similarly present a new *Bivens* context. *See Scott*, 2020 WL 8611292, at *5.

Plaintiffs' allegations related to inadequate health care, while presenting a closer call, also present a new *Bivens* context. Almaleh complains of "irregular supply of medications" and placement in "dark cave conditions for 10 days" despite his medical condition, while Iotova alleges that she was "not provided . . . with any medical or dental help," including delayed access to a blood test. (TAC, ECF No. 70 ¶¶ 16, 26, 29.) These allegations differ substantially from *Carlson*, where the staff at the prison was aware of a medical condition, knew that its facilities were improper, failed to provide the correct medical aid, and offered aid that in fact worsened the incarcerated individual's medical condition. *Carlson*, 446 U.S. at 17 n.1. Further, the claims here involve a different constitutional right in that *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth. *See Ziglar*, 582 U.S. 148. While *Laurent* allowed a *Bivens* claim for deliberate indifference toward a pretrial detainee's medical needs despite the claim being raised under the Fifth Amendment, *Laurent* was based on the "extremely strong" resemblance of its facts to *Carlson*. *Laurent*, 2018 WL 2973386, at *5. The present case is distinguishable from both *Laurent* and *Carlson* because those cases dealt with allegations against defendants who were medical personnel specifically tasked with treating the inmate. Here, neither Iotova nor Almaleh have pleaded whether Quay, Bridges, and Spivey were ever responsible for providing medical treatment for their respective ailments.

Having concluded that the claims arise in a new *Bivens* context, the Court turns to the question of whether there are any "special factors" that counsel hesitation in the absence of affirmative action by Congress. *Carlson*, 446 U.S. at 18. Here, the availability of alternative

remedies, specifically the FTCA, strongly counsels against permitting a *Bivens* cause of action. *See Scott*, 2020 WL 8611292, at *7–8 (collecting cases where courts within the Second Circuit have dismissed *Bivens* claims because the FTCA provides an adequate alternative remedy); *Johnson v. Santiago*, 624 F. Supp. 3d 295, 302 (E.D.N.Y. 2022) ("[T]he court agrees with the 'many cases' that have concluded — following the Supreme Court's decision in [*Ziglar v.*] *Abbasi* — that the remedies provided by the [FTCA] constitute 'a special factor counseling hesitation in extending *Bivens*.'") (quoting *Edwards v. Gizzi*, 2022 WL 309393, at *8–9 (S.D.N.Y. Feb. 2, 2022) and collecting cases). In addition, courts in this circuit have recognized that special factors counsel against recognizing a *Bivens* remedy "'in cases involving prison administration'" where deference is owed to prison administrators in preserving institutional security and internal order. *See, e.g.*, *Johnson*, 624 F. Supp. 3d at 303 (quoting *Schulte v. Bureau of Prisons*, No. 20-CIV-2795 (PGG)(GWG), 2022 WL 1468017, at *4 (S.D.N.Y. May 10, 2022)). Because "it would be inappropriate for the court to imply a remedy for damages in an area that is uniquely within the province and professional expertise of corrections officials," the Court declines to extend a *Bivens* remedy to Plaintiffs' claims. *Id.*

Based on the foregoing, the Court respectfully recommends that Plaintiffs' *Bivens* claims should be dismissed.[7]

---

[7] To the extent that the TAC alleges a claim under the First Amendment for religious discrimination, the claim should also be denied. First, Plaintiffs have failed to allege specific acts of discrimination by Quay, Bridges, and Spivey, despite the Court's previous instruction that Plaintiffs "must allege individualized facts . . . supporting the elements of each claim" and "identify the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation." *Iotova III*, 2020 WL 818906, at *5. Iotova states, in vague terms, that MDC personnel discriminated against her because of her "conservative religious views" and that the personnel "joined the bully[ing] and the discrimination" for "being a white, Jewish,

### D.    Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (internal quotation marks and citation omitted). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies." *Clayton v. United States*, No. 18-CV-5867 (MKB)(LB), 2020 WL 1545542, at *6 (E.D.N.Y. Mar. 31, 2020) (citing *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017)).

Here, amendment would be futile because additional pleading would not cure this Court's lack of subject matter jurisdiction over Plaintiffs' FTCA claims. *See Bastien v. Samuels*, No. 14-CV-1561 (JFB)(AKT), 2014 WL 5306016, at *5 (E.D.N.Y. Oct. 15, 2014) (denying motion for leave to amend because plaintiff's untimely claims under the statute of limitations would render any amendment to the complaint futile); *see also Baptichon v. United*

---

heterosexual woman from Eastern Europe." (TAC, ECF No. 70 ¶ 13, 15.)  Similarly, Almaleh claims that he was "exposed to extreme anti-Semitism and discrimination from the 99% black personnel in the jail."  (*Id.* at 17 ¶ 30.)  These allegations are insufficient and should be denied for failure to state a claim. *Contra Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (vacating dismissal of religious discrimination claim because plaintiff pleaded specific facts to show a substantial burden on his sincere religious beliefs: *e.g.*, officers obstructed all communal prayer, used derogatory terms, and interrupted plaintiff's prayer after thirty seconds).

In any event, "[i]t makes no difference what conduct that [Plaintiffs] intended to allege . . . because the Supreme Court has 'never held that *Bivens* extends to First Amendment claims.'" *Schulte*, 2022 WL 1468017, at *3 (quoting *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)); *White v. Hess*, No. 14-CV-03339 (CBA)(LB), 2020 WL 1536379, at *6 (E.D.N.Y. Mar. 31, 2020) ("'[n]ationwide, district courts seem to be in agreement that, post-[*Ziglar v.*] *Abbasi,* prisoners have no right to bring a *Bivens* action for violation of the First Amendment.'") (quoting *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018)).

*States Dep't of Educ.*, No. 20-CV-2400 (PKC)(LB), 2020 WL 6565126, at *6 (E.D.N.Y. Nov. 9, 2020) (denying *pro se* plaintiff leave to amend complaint as futile when action was dismissed for lack of subject matter jurisdiction).

Moreover, for the *Bivens* claims, Plaintiffs have already been afforded two opportunities to amend, but each of their amended complaints alleges the same claims in a substantially similar version.  (*Compare* FAC, ECF No. 24 at 22 ("Iotova has been bullied for everything she was doing in the unit.") *with* SAC, ECF No. 49 at 9 ("Iotova has been bullied and discriminated for everything she was doing in the unit.") *and with* TAC, ECF No. 70 at 7 ("Iotova was bullied and discriminated for everything she was doing in the unit."); *compare also* FAC, ECF No. 24 at 23 ("the said transgender organized his friends to cop her out in the computer, advocating for placing Iotova in SHU.") *with* SAC, ECF No. 49 at 10 ("the same man organized his friends to cop her out in the computer advocating for placing Iotova in "SHU.") *and with* TAC, ECF No. 70 at 8 ("the same man organized his friends to cop her out in the computer, advocating for placing of Iotova in "SHU.")).  The Court, in previous orders, provided clear guidance to Plaintiffs as to what was needed to sufficiently allege their claims, yet Plaintiffs fail to allege new facts, including in the TAC.  *See Iotova I*, 2019 U.S. Dist. LEXIS 252994 at *3; *see also Iotova II*, 2020 WL 818906, at *4 ("Iotova is . . . granted leave to amend her complaint to allege sufficient facts that correction officials were deliberately indifferent because they knew of a specific serious risk to her health and safety" yet took no action in violation of the due process clause of the Fourteenth Amendment); *see Iotova III*, 2020 WL 1643637, at *3 ("Accordingly, Iotova has failed to state a claim MDC officials failed to protect her in violation of the Fourteenth Amendment.").  This repeated disregard of the Court's orders makes it apparent that further leave to amend would be futile. *See Edelman v.*

*United States Gov't*, No. 18-CV-2143(JS)(SIL), 2022 WL 2390987, at \*14 (E.D.N.Y. July 1, 2022) (denying leave to amend after plaintiff's third amended complaint because plaintiff "disregarded the Court's instruction and, rather than attempt to cure the noted deficiencies, Plaintiff largely re-filed those claims").

For these reasons, the Court respectfully recommends that the TAC should be dismissed with prejudice and without leave to amend.

## III.   **CONCLUSION**

For the reasons set forth above, the Court respectfully recommends that: (1) Defendants' motion to dismiss should be **granted**, (2) the Third Amended Complaint should be dismissed with prejudice, and (3) leave to amend should be **denied** as futile.

A copy of this Report and Recommendation is being served on Plaintiffs by email because they consented to electronic notifications of Court orders (ECF Nos. 92–93) and on Defendants via ECF through counsel.  In an abundance of caution, the Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to *pro se* Plaintiffs at the mailing address of record on the docket: 822 South 26th Avenue, Hollywood, FL 33020.[8]

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Gujarati.  If a party fails to object timely to this Report and Recommendation, it waives any right to further

---

[8] Previous mailings to this address were returned as undeliverable but Plaintiffs have not apprised the Court regarding changes in mailing address.

judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 4, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge